IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CAROLYN M. DAVIS, | ) | |
| | ) | 4:06CV3291 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court pursuant to plaintiff's appeal of an adverse decision by the Social Security Administration. Filing No. 1. This is an action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") that plaintiff is not disabled. The Commissioner found plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff filed her application for disability benefits on July 9, 2002, alleging that she became disabled on May 12, 1996, due to leg and knee problems, back problems, right shoulder surgery for rotator problems, osteoarthritis, sleep deprivation and pain.[1] The Social Security Administration denied the plaintiff's claim initially and on reconsideration. *Id.*

On March 5, 2004, plaintiff appeared with counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). On May 12, 2004, the ALJ denied the plaintiff's claim. The ALJ's decision became the Commissioner's final decision on October 25, 2006, when the Appeals Council denied plaintiff's request. Pursuant to 42 U.S.C. § 405(g), plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

---

[1] This case is limited by the expiration of the plaintiff's insured status pursuant to Title II, which occurred on June 30, 2002. 20 C.F.R. § 404.130; *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). Plaintiff must establish she was disabled prior to the expiration of her insured status.

**LEGAL STANDARD**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  *See Braswell*, 733 F.2d at 533.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question.  *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the

Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir. 1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (citation omitted). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

## BACKGROUND

Plaintiff was 64 years of age at the time of the ALJ's decision. She had a past relevant work history which included jobs as a sales attendant, garden farmer, furniture salesperson, sales clerk, office helper, and restaurant manager. In addition she had a college degree in general studies. On May 12, 1996, she fell and hurt her left leg. Tr. 46. She says she has been unable to bear weight on her foot since that time, and she has stiffness in her knee. She also had a primal fibular fracture and a peroneal injury on her

right ankle in 1997. In October 1996, she underwent surgery for left leg peroneal nerve entrapment, exploration and release, Tr. 262, which at that time relieved most of her pain. Tr. 271. However, she continued to have lower extremity edema in 1997. *Id.* Her foot was checked again in 1999 and she had some tenderness and pain, but she had full strength. Tr. 351. Plaintiff has had back problems since the 1980s when she saw a spine specialist. She had an MRI of her back in September 1999, which showed degenerative disc disease and other defects in her discs. Tr. 360. Because of her pain, plaintiff took numerous medications, including Neurontin. Tr. 288-89. In January 2000, she returned to a physical therapist for hip and leg pain. Plaintiff underwent an EMG in February 2000, and was referred to a surgeon, Dr. Robert Vande Guchte. Plaintiff then went to counseling where she reported personal problems, but in addition, she stated to her counselor that she made chocolates and cakes in the winter months and sold flowers, fruits and vegetables she grew herself in the summer. Tr. 328. The Commissioner relies on these statements as evidence that plaintiff can perform full-time work in the national economy. Plaintiff testified at the hearing that she could do some gardening up to 25 hours per week, and she could walk up and down a bike path for about two miles. (Tr. 128; 206).

On February 9, 2001, plaintiff also fell and hurt her right shoulder and left knee. Tr. 387, 390. Dr. Scott Strasburger, her treating physician, examined plaintiff for a shoulder injury. She underwent arthroscopy and decompression surgery on her shoulder in December 2001. Tr. 389. Her doctor said she had pain relief in her shoulder five months later. From that same fall, she had a meniscus tear in her left knee. Tr. 387. In August 2001, Dr. Keith Hughes, her treating physician, noted plaintiff continued to complain of ankle and leg pain. Tr. 339. After that time, she received a permanent disability of six

percent of the left knee, and she was instructed to lift no more than ten pounds and no repetitive use above her shoulder. Tr. 393. On October 2, 2002, Dr. Hughes wrote that plaintiff is "disabled at this point given her multiple injuries, chronic sleep deprivation and continued pain level." Tr. 378.

**DISCUSSION**

The Commissioner argues that plaintiff must prove she was disabled prior to June 2002 (see footnote 1). The ALJ found the plaintiff suffered from severe impairments, but that she did not meet a listed impairment; that she was not fully credible regarding all of her limitations; that her residual functional capacity (RFC) included not lifting more than twenty pounds, standing or walking for no more than six hours per day, and only occasionally bending, kneeling, stooping or crawling. Tr. 38. The vocational expert's ("VE") testimony indicated plaintiff could still perform her past relevant work. *Id.*

### A. Treating Doctor

Plaintiff first argues that the ALJ erroneously discounted the opinions of Dr. Hughes, Dr. Strasburger, Dr. Vande Gutche, Dr. Edward Shima, and Dr. Robert Valente. Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are

supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan*, 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). Plaintiff in this case is arguing that the ALJ gave significant weight to the consulting but not the treating physicians. The Commissioner argues that Dr. Hughes' final opinion cannot be considered as it occurred after plaintiff's eligibility date. Plaintiff argues the opinion, although late, related to her condition during the time of eligibility.

The court agrees that the ALJ failed to give due consideration to all of plaintiff's treating physicians. It is clear from the record that plaintiff suffered from considerable foot, leg, knee, back, spine, and shoulder disorders. In addition, it is clear plaintiff suffered from pain and sleep problems. Dr. Hughes opined that plaintiff is disabled. The Commissioner is correct that Dr. Hughes rendered his final opinion after her eligibility date. The date of this opinion is October 2002, three months post-eligibility. However, this opinion indicates plaintiff's lower extremities are essentially unchanged and refers to her previous history. Tr. 378. This opinion refers to pre-eligibility notes that indicate plaintiff's condition is virtually the same. It is clear to the court, however, that nearly all of what Dr. Hughes opined resulted from his treatments during her eligibility. It is permissible to consider evidence outside of the insured's time status, so long as it is relevant to the time plaintiff was insured. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'") (citation omitted). Accordingly, the court finds it will consider Dr. Hughes' report, since it is based on his long-term treatment of the plaintiff. It further appears to the court that the ALJ relied more on the consulting

physicians rather than the treating physicians.  The evidence in this case is replete with plaintiff's history of injury and illness, and thus, such reliance by the ALJ in this case is misplaced.

### B.  Residual Functional Capacity ("RFC")

RFC is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule.  Soc. Sec. Rul. 96-8p.  RFC is what an individual can still do despite her impairments and the resulting limitations. While the RFC is a medical question, *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), RFC is not based solely on "medical" evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations).

Plaintiff argues the ALJ erred in failing to accurately evaluate her residual functional capacity.  Plaintiff first argues that the ALJ ignored the issue of sustainability, SSR 96-8p, 20 C.F.R. 404.1545(b).  She also argues that the ALJ failed to perform function-by-function analysis required by SSR 96-8p, that his RFC findings are conclusory and not supported by substantial evidence, and that he used an incorrect legal standard to evaluate her credibility and discounted the severity of her symptoms.  Plaintiff argues that she must be able to do the physical acts day in and day out. Plaintiff contends that the ALJ failed to discuss whether she could perform physical work day in and day out.   The ALJ relied on plaintiff's testimony that on September 10, 2001, she had been quite busy with her produce business.  Tr. 36.   Plaintiff argues that reliance on this testimony without medical corroboration is error.  Further, the plaintiff argues the ALJ made a judgment based on

7

plaintiff's short-term seasonal work that she could work longer hours and more days.  In addition, the ALJ then failed to conduct a function-by-function analysis of plaintiff's abilities and her past relevant jobs.

Plaintiff argues that the ALJ failed to consider precipitating and aggravating factors. She testified that she could not kneel or use or her arms for long periods of time, and that she could do some produce business because she had control over sitting or standing. Tr. 141.  Any discussion of complete relief of her shoulder pain, argues plaintiff, is said in a context used by the ALJ when plaintiff did not work. Dr. Stasburger, her treating shoulder physician, continued to see plaintiff regarding her shoulder in February, March, May and June 2002. Tr. 387-89. Dr. Srasburger's notes that on June 12, 2002, plaintiff has had an exacerbation of her shoulder rotator problem and "I've told her to avoid activities that cause her any problems." Tr. 387.  Thereafter, Dr. Strasburger said she could perform activities as tolerated.  On May 12, 2002, Dr. Strasburger gave plaintiff a twelve percent right shoulder impairment with an overall eight percent body impairment.  Tr. 388.

The plaintiff again argues that the ALJ's finding with regard to her RFC is really based on the state agency physicians. *Compare* Tr. 38, Finding 4, with Tr. 214-215 and 222-223), and in particular Tr.  219 and 227 dealing with lack of treating source opinion. Plaintiff contends that the ALJ failed to follow SSR 82-62 and Eighth Circuit cases for determining the Step 4 requirements.  Under Step 4 the ALJ must set forth the plaintiff's limitations, both physical and mental, determine how those limitations affect her RFC, and make explicit findings regarding the physical and mental demands of plaintiff's past work. The ALJ must then compare the RFC with the past work demands to see if plaintiff can perform this work.  The ALJ cannot simply make conclusions without these findings. *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997).  Plaintiff argues that the ALJ failed to

8

follow this procedure. See Tr. 37. The ALJ made no comparison as to the requirements for standing, sitting, and walking. Such failure, argues plaintiff, requires reversal. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005).

The Commissioner contends that the ALJ correctly assessed plaintiff's residual functional capacity. The plaintiff described herself as self-employed in 2001. Plaintiff said she was quite busy in her produce business. Tr. 321. Her claims about how many hours she worked and whether she purchased or picked her produce for sale were inconsistent according to the ALJ. Tr. 55; 321. She stated during her testimony that she worked her vegetable stand four hours in the afternoon in the summers from 1998 through 2002. She also made flower arrangements while sitting at her stand. Tr. 58. The Commissioner argues that this is indicative of a full day of work by the plaintiff. The Commissioner responds that the ALJ correctly assessed plaintiff's ability to return to her other previous work. The Commissioner contends that the ALJ determined that plaintiff's past relevant work was not as demanding as farming. The Commissioner also argues that the ALJ was entitled to discount many of plaintiff's complaints, arguing that the medical evidence showed improvement in all her disabilities. Tr. 271; 572; 339; 388; and 386. Further, the Commissioner again disagrees that Dr. Hughes' opinion should be considered, as it is post-October 2002 when plaintiff's insured status expired.

The Commissioner contends that the ALJ identified inconsistencies in the record and found her allegations to be only partially credible. The ALJ then found plaintiff retained the RFC to lift twenty pounds occasionally, to lift ten pounds frequently, and to only occasionally participate in overhead reaching. She could stand for up to six hours a day, and sit for six hours per day, with only occasional bending, kneeling, stooping or crawling. Tr. 38. The ALJ then determined that plaintiff could perform her past relevant work. The

9

ALJ relied on the vocational expert in making these decisions, who found plaintiff could specifically perform these jobs as performed in the national economy. Plaintiff argues, however, that the ALJ did not consider or discuss any medical evidence to support his RFC finding.

The court notes it is permissible for the ALJ to consider part-time work regarding her claims of pain. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). However, the court agrees with the plaintiff that the ALJ failed to provide support for his finding that plaintiff could sustain a job for forty hours per week, eight hours a day, five days a week. SSR 96-8p; 20 C.F.R. § 404.1545(b) and (c). There is no evidence in this record that plaintiff could sustain such a work schedule. Nor is there any evidence in this record to find that plaintiff can sustain a forty-hour week, eight hours a day, five days a week, at any of her past relevant jobs. Further, it appears the ALJ shifted the burden of proof at Step 4 requiring plaintiff to show her symptoms preclude all work. Step 4 requires the ALJ to determine only whether the claimant can return to her past relevant work. *Kramer v. Apfel*, 4:00-CV-3110, Order of Judge Warren Urbom at 9-10 (D. Neb. March 8, 2001). The court finds the ALJ erred in that regard. The ALJ simply failed to show the plaintiff had the RFC to perform her past relevant work or any other work in the national economy, and the court finds this is error.

### *C. Pain*

In addition, plaintiff argues the ALJ failed to consider her allegations of pain. It is clear from the objective record that plaintiff has pain. The question is how severe the pain is for plaintiff. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). The standard in the Eighth Circuit for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit,

an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the [plaintiff's] daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polakski*, 739 F.2d at 1322 (emphasis in original). "Pain is recognized as disabling when it is not remediable and precludes claimant from engaging in form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability." *Cruse v. Bowen*, 867 F.2d 1183, 1183 (8th Cir. 1989) (citations omitted).

"Not all pain reaches a level [at] which is disabling." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

11

In this case, the ALJ did in fact discount plaintiff's subjective complaints of pain. The ALJ minimized the record and the number of times plaintiff had been in pain and on pain medications. It is clear from the record that plaintiff has had pain off and on for a number of years. On August 23, 2001, Dr. Robert A. Vande Gutchte noted plaintiff's lower lumbar back pain which is of a discogenic nature, probably at the L-4-5 level. Tr. 338. Dr. Vande Gutchte also noted her pain in her left lower extremity that he says is "more likely to be due to the peroneal nerve irritation." *Id.* Dr. Hughes noted "a history of chronic back pain" on October 2, 2002. Tr. 378. Dr. Hughes also noted that "she cannot sleep on this side due to significant pain with any pressure over the area." Tr. 352. On September 30, 1999, Dr. Edward Schima, a treating doctor from the Omaha Neurological Clinic, noted that "the symptoms will sometimes awaken her from a sound sleep. In addition, she has had sharp stabbing knife-like pains that radiate downward from the knee. These occur primarily at night." Tr. 287. Dr. Shima also noted that plaintiff's major problem was pain, and suggested to Dr. Hughes that her Neurontin be increased from 100 mg a day to 400 mg per day. Tr. 288-89. Plaintiff also received Hydrocodone for her pain. Tr. 442. Dr. Robert Valente, a treating physician at the Arthritis Center, also noted "chronic pain syndrome following nerve injury," Tr. 467, and that "she has had no resolution of the severe chronic pain involving her left calf. The pain is beginning to generalize with increased myalgias in her forearms and other parts of her body." Tr. 462. Dr. Valente increased her Vioxx to 25 mg once a day. He also suggested that she seek the pain management services at the Mayo Clinic. Tr. 463. Dr. Vande Buchte stated "However, there certainly is enough evidence that would suggest that the lumber spine pathology seen . . . may be contributing to this patient's overall symptoms of back pain and left lower extremity symptoms." Tr. 343-44. The ALJ failed to take this pain into consideration, particularly since such pain is

supported by substantial objective evidence for a number of years and is consistent with the plaintiff's testimony. Plaintiff also contends that at night these symptoms prevent her from finding a comfortable position resulting in sleep deprivation. Tr. 184, 50, 51-52. This lack of sleep causes her not to function. Tr. 52. Dr. Hughes supports this in his finding where he states on October 2, 2002, that plaintiff has suffered from "chronic sleep deprivation." Tr. 378. Dr. Hughes found her disabled because of her "chronic sleep deprivation and her continued pain level." *Id.* The ALJ clearly erred in minimizing and discounting plaintiff's allegations of pain and sleep deprivation when taken in conjunction with the medical objective findings.

### *D. Failure to Develop the Record*

An ALJ has a duty to fully develop the administrative record fully and fairly. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). Plaintiff argues that the ALJ failed to consider the opinion of Dr. Hughes that she is disabled.[2] The ALJ, says plaintiff, failed to include this relevant testimony in any consideration of his opinion, and instead, the ALJ relied on non-treating, non-examining physician opinions as well as his own medical speculation.[3]

With regard to this argument, the Commissioner contends that the ALJ need only develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). The Commissioner contends that he fully developed the record, and plaintiff just disagrees with his conclusions regarding Dr. Hughes' opinions.

---

[2] lThe court has already concluded that Dr. Hughes' opinion should be considered in this case.

[3] In addition, a letter was submitted to the Appeals Council on December 30, 2005, discussing the severity of plaintiff's symptoms, most of which allegedly discussed pre-eligibility symptoms. The Appeals Council returned this letter to the plaintiff and did not include it in the record. It is not necessary to determine whether this is error, given the fact that the court is reversing the ALJ in any event.

The court disagrees. The court has already concluded that the ALJ failed to fully develop the record as to whether plaintiff could sustain a forty-hour work week, and as to plaintiff's pain and sleep deprivation. Further, the court has determined that defendant failed to fully consider Dr. Hughes' opinion and testimony that plaintiff is disabled, has failed to adequately consider the medical records of plaintiff's other treating physicians, and has further failed to adequately consider plaintiff's pain and sleeplessness as they relate to her ability to perform sustained work.

### E.  Vocational Expert

To assist an ALJ making a disability determination, a VE is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983)). Courts apply a harmless-error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695-96 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question

14

that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997)), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony in this case was not substantial evidence.

The plaintiff argues that the VE responded to questions not supported by any medical evidence. This, argues plaintiff, cannot be substantial evidence. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). Plaintiff further argues that neither the ALJ nor the VE identified the actual demands listed in the jobs the VE felt the plaintiff could perform. Plaintiff also contends that the hypothetical was defective in two ways. First, it was not supported by the real evidence in the case, and second, it failed to consider plaintiff's long history of leg and back pain or sleep deprivation. When plaintiff's counsel asked the VE to consider those additional factors, the VE testified that plaintiff would be unable to perform jobs in the national economy. Tr. 62.

Plaintiff further argues that the ALJ held her to a high burden of proof about work in the national economy, rather than simply finding that she could not perform her past relevant work. The Commissioner contends that he did not place any higher burden on the plaintiff. The Commissioner argues he did not shift the burden of proof to the plaintiff regarding her ability to perform work in the national economy.

The ALJ reviewed the evidence, listened to the testimony of the VE, and concluded that the plaintiff had the RFC to perform work in the national economy. However, the court finds this ignores Dr. Hughes' opinion, the objective evidence set forth by plaintiff's treating physicians, and plaintiff's history. Tr. 59-60; 377-78. Further, the court agrees that the ALJ erred in posing incomplete hypotheticals to the ALJ. These hypotheticals did not account for plaintiff's pain, assumed she could work forty hours a week, and did not take into

15

account all of plaintiff's objective or subjective evidence as previously discussed herein. Accordingly, the court finds the testimony of the VE is not substantial evidence in this case.

## CONCLUSION

Plaintiff was 64 years of age at the time of the ALJ's decision. She has a twenty-year history of back, knee and leg problems; she has degenerative disc disease; she has fallen and been hurt on a number of occasions; she has shoulder problems which included rotator cuff surgery; she has been on and off pain medications for years; she had significant physical therapy; she has a sleep disorder; she has some permanent disability of both the leg and the shoulder; and she had seen numerous doctors who have documented her objective and subjective symptoms. The ALJ discounted her pain and sleep problems even though they are clearly documented in the medical records. Further, the ALJ noted on several occasions that plaintiff's doctors referred to improvements in her condition. However, this was taken out of context, and not once did the ALJ cite evidence that plaintiff had improved to a degree that she could perform sustainable work. The evidence does not support that plaintiff can work or has worked a forty-hour week. The ALJ made no determinations with regard to plaintiff's abilities to do specific jobs for forty hours per week. Further, the questions raised before the VE clearly did not take into account plaintiff's pain and sleep issues, nor did it take into account whether she could in fact work forty hours per week. On July 29, 2002, Dr. Strasburger likewise found plaintiff's lifting should be limited to no more than occasionally lifting ten pounds, again basing his findings on pre-expiration status. (*See* Footnote 1). Tr. 393. Yet, the ALJ determined she could lift twenty pounds occasionally and posed that fact to the VE. All of plaintiff's past work was at the light or medium work level. Such restrictions would put her at the sedentary level at best. Considering plaintiff's advanced age, the ALJ should have

considered whether she had transferrable skills. He did not do so. Tr. 60. Such findings must be made on the record. SSR-82-41. In any event there is no evidence that plaintiff could perform sedentary work.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Iowa 2000). The court determines that the record overwhelmingly supports a finding of disability. Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled. Accordingly,

IT IS ORDERED:

1. This case is remanded to the defendant for an award of benefits. A separate judgment will be entered in conjunction with this memorandum and order.

2. The plaintiff shall have fourteen days from the date of this order to file a motion and brief with appropriate documentation requesting attorney fees in this case. Defendant shall have fourteen days after plaintiff files her motion to file a response.

DATED this 27th day of March, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge